SILVERMAN, Circuit Judge,
concurring:
There is only one living witness to the abuse supposedly inflicted on Heishman by his grandfather, Jack Sehatt — petitioner Harvey Lee Heishman himself. And yet Heishman has never testified that he was abused by Sehatt; he has submitted no declaration to that effect; and his counsel have made no avowal or proffer that Heishman would ever so testify.
How, then, did this “fact” get before the court? The answer is that mitigation specialists hired by Heishman’s federal habeas counsel reported that they succeeded in eliciting this information from him. It was their reports of Heishman’s out-of-court statements to them that came before the court, not any first-hand testimony from Heishman himself.
Rule 703 of the Federal Rules of Evidence permits experts to render opinions even if based on hearsay so long as the hearsay is of the type reasonably relied on by experts in that field. But that rule does not convert the underlying inadmissible hearsay into admissible testimony — it only makes the opinion admissible. As we said in Paddock v. Dave Christensen, Inc., 745 F.2d 1254, 1261-2 (9th Cir.1984), “Rule 703 merely permits such hearsay, or other *1043 inadmissible evidence, upon which an expert relies, to be admitted to explain the basis of the expert’s opinion, [citations omitted.] It does not allow the admission of the reports to establish the truth of what they assert.”
This is just common sense. If the law were otherwise, a party could use an expert as a conduit for self-serving statements and totally avoid cross-examination. In fact, that is what has happened here— Heishman has gotten his newly-developed abuse story before the court (of which he alone supposedly has first-hand knowledge) without having to subject himself to any questions about it.
And it is not as though this blatant hearsay is particularly reliable and therefore admissible under the residual hearsay exception of Federal Rule of Evidence 807. To the contrary, the hearsay from Heishman’s experts not only flatly contradicts Heishman’s previous and long-standing statements about his childhood, but was developed after he had lost his state court appeals, was turned down by the United States Supreme Court, and was inching closer and closer to execution. In other words, these hearsay statements were made at a time when Heishman had a very strong incentive to prevaricate. Moreover, these statements were not made to clinicians in a therapeutic setting for the purposes of treatment, a situation that imparts a circumstantial guarantee of trustworthiness. Rather, they were made to experts hired by his own lawyers to develop information in aid of the litigation.
I do not know whether or not Heishman had been abused by his grandfather. The only living soul who does know is Heishman, and he neither testified nor furnished a declaration. Thus, there was no admissible evidence before the district court that the supposed abuse ever occurred. In the absence of such proof, the premise of the habeas petition fails. Nevertheless, if we hypothesize that Heishman would have testified in court to the things his proxies say he told them, the reasoning of the per curiam opinion is sound: the district court did not abuse its discretion in finding as a matter of fact that Heishman would not have made his disclosure about his grandfather back in 1980, even if his trial counsel had caused him to be examined by Dr. Berg. For that reason, I concur.